John Buse (CA Bar No. 163156)
*pro hac vice* application pending
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street, Suite 600
San Francisco, CA 94104
Telephone:    (323) 533-4416
Fax:               (415) 436-9683
jbuse@biologicaldiversity.org

Attorneys for Plaintiff
CENTER FOR BIOLOGICAL DIVERSITY

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>　　　　　Plaintiff<br><br>vs.<br><br>KEN SALAZAR, Secretary of the Interior, and UNITED STATE FISH AND WILDLIFE SERVICE,<br><br>　　　　　Defendants. | Civil Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1.     Plaintiff Center for Biological Diversity ("the Center") brings this action under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, to challenge the failures of the Secretary of the Interior (the "Secretary") and the United States Fish and Wildlife Service (the "Service") (collectively, "Defendants") to make required findings as to whether two species native to the Sonoran Desert – the Tucson shovel-nosed snake (*Chionactis occipitalis klauberi*) and the cactus ferruginous pygmy-owl (*G. ridgwayi cactorum*) – warrant protection under the ESA.

2.     Concerned that the Tucson shovel-nosed snake may face extinction as a result of the destruction of its habitat, on December 15, 2004 the Center submitted a petition to list this subspecies as an endangered or threatened species pursuant to the ESA. On July 29, 2008, the Secretary issued a 90-day petition finding, which concluded that the Center's petition presented substantial information indicating that the listing of the Tucson shovel-nosed snake may be warranted. 73 Fed. Reg. 43905. To date, however, the Secretary has failed to make the mandatory 12-month finding as to whether the listing of the Tucson shovel-nosed snake is warranted, and is therefore in violation of the ESA.

3.     Based on a similar concern that the cactus ferruginous pygmy-owl is threatened with extinction throughout all or a significant portion of its range, on March 15, 2007 the Center submitted a petition to list the Arizona distinct population segment ("DPS"), the Sonoran Desert DPS, or the entire western subspecies of the pygmy-owl as an endangered or threatened species. On June 2, 2008, the Secretary issued a 90-day petition finding, concluding that the petition presented substantial information

indicating that the listing of the cactus ferruginous pygmy-owl may be warranted. 73 Fed. Reg. 31418. To date, however, the Secretary has failed to make the mandatory 12-month finding as to whether the listing of the cactus ferruginous pygmy-owl is warranted, and is therefore in violation of the ESA.

4. The Center seeks declaratory and injunctive relief to enforce the ESA's mandatory 12-month deadline to make a finding on the petitions to list the Tucson shovel-nosed snake and the cactus ferruginous pygmy-owl, and to compel the Secretary to determine whether listing the Tucson shovel-nosed snake and the cactus ferruginous pygmy-owl as threatened or endangered is warranted. 16 U.S.C. § 1553(b)(3)(B).

## II.  JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) and (g) (action arising under ESA citizen suit provision), 5 U.S.C. § 702 (review of agency action under the Administrative Procedure Act ["APA"]), and 28 U.S.C. §§ 1331 (federal question jurisdiction).

6. This Court may grant the relief requested under 16 U.S.C. § 1540(g) (ESA), 5 U.S.C. §§ 701-706 (Administrative Procedure Act), and 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief),.

7. The Center provided 60 days notice of their intent to file this suit pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(2)(C), by letter to Defendant Ken Salazar dated December 14, 2009. Defendants have not responded to the notice of intent to sue nor have the Defendants remedied the alleged violations. Therefore, an actual controversy exists between the parties within the meaning of 28

U.S.C. § 2201. For all claims, the Center has exhausted all of the administrative remedies available to it.

8. Venue is proper in the District Court for the District of Arizona pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e)(2) because the Tucson shovel-nosed snake and the cactus ferruginous pygmy-owl are found within this district, and a substantial part of the events giving rise to the Center's claims occurred in this district.

9. The Tucson Division of this judicial district is the proper division for hearing this matter pursuant to Civil LRCiv 77.1(c).

### III.   PARTIES

10. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit corporation with offices in Tucson and Flagstaff, Arizona; San Francisco, Los Angeles, and Joshua Tree, California; Portland, Oregon; Silver City, New Mexico; and Washington, D.C. The Center is actively involved in species and habitat protection issues throughout North America and the Pacific. The Center has over 42,000 members, including members who reside in Arizona within the current and historic range of the Tucson shovel-nosed snake and the cactus ferruginous pygmy-owl.

11. The Center's members and staff include persons with educational, conservation, scientific, moral, spiritual and aesthetic interests in the Tucson shovel-nosed snake and the cactus ferruginous pygmy-owl. Center members and staff live and work in communities within or in close proximity to Tucson shovel-nosed snake and cactus ferruginous pygmy-owl habitat. They use, on a continuing and ongoing basis, these areas for educational, conservation, scientific, moral, spiritual and aesthetic

purposes, including, but not limited to, aesthetic enjoyment, photography, nature study, and wildlife observation, and intend to continue this use in the future. The Center and its members further derive educational, conservation, scientific, moral, spiritual and aesthetic benefit and enjoyment from the existence of the Tucson shovel-nosed snake and the cactus ferruginous pygmy-owl in the wild.

12. The Center and its members have participated in efforts to conserve the Tucson shovel-nosed snake and the cactus ferruginous pygmy-owl, and to protect these species' habitat. The Center submitted a petition to list the Tucson shovel-nosed snake as an endangered or threatened species on December 15, 2004. Members and staff of the Center submitted the original petition to list the cactus ferruginous pygmy-owl in 1992, which culminated in listing of the Arizona DPS in 1997. The Center subsequently challenged the Secretary's failure to designate critical habitat for the cactus ferruginous pygmy-owl. When a coalition of industry groups and trade associations sued the Secretary to remove the ESA's protections from the DPS, the Center intervened as a defendant to uphold the listing. Finally, after the pygmy-owl was ultimately removed from the list of endangered and threatened species in 2006 despite the Center's efforts to defend its listing, the Center submitted a petition to again list the Arizona DPS, the Sonoran Desert DPS, or the entire western subspecies of the pygmy-owl as an endangered or threatened species on March 15, 2007.

13. The Center's conservation efforts are prompted by the concern that the Tucson shovel-nosed snake and the cactus ferruginous pygmy-owl are at serious risk of extinction. The Secretary's failure to comply with the ESA's non-discretionary

deadline for issuing a 12-month finding on the Tucson shovel-nosed snake and the cactus ferruginous pygmy-owl listing petitions deprives these species of statutory protection vitally necessary to their survival.  Unless and until the Tucson shovel-nosed snake and the cactus ferruginous pygmy-owl are protected under the ESA as endangered or threatened species, the Center's interest in the conservation and recovery of these species is impaired.  Therefore, the Center's members and staff are injured by the Secretary's failure to make timely determinations as to whether listing the Tucson shovel-nosed snake and the cactus ferruginous pygmy-owl is warranted, as is required by the ESA.  This injury caused by Secretary's failure to comply with the ESA is actual, concrete, and imminent.  The declaratory and injunctive relief requested will fully redress the injury.  The Center has no adequate remedy at law.

14.     Defendant KEN SALAZAR is the Secretary of the Interior and is the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including proposed and final critical habitat decisions.  Secretary Salazar is sued in his official capacity.

15.     Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior that is charged with implementing the ESA for terrestrial species, including the Tucson shovel-nosed snake and the cactus ferruginous pygmy-owl, as well as ensuring prompt compliance with the ESA's mandatory listing deadlines.

## IV.   STATUTORY BACKGROUND

16. The ESA is a federal statute enacted to conserve species in danger of extinction and the ecosystems upon which they depend. 16 U.S.C. § 1531(b). The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 180 (1978). The Supreme Court's review of the ESA's "language, history, and structure" convinced the Court "beyond doubt that Congress intended endangered species to be afforded the highest of priorities." *Id*. at 174. As the Court found, "[t]he plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost." *Id*. at 184.

17. Congress enacted the ESA "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species . . ." 16 U.S.C. § 1531(b). To this end, the ESA section 4, requires that the Secretary protect such species by listing them as either "threatened" or "endangered," and by designating "critical habitat" for each species at the time the species is listed. 16 U.S.C. § 1533.

18. According to the ESA, a species as "endangered" if it is in "danger of extinction throughout all or a significant portion of its range" and "threatened" if it is "likely to become an endangered species within the foreseeable future…" 16 U.S.C. § 1532(6), (20).

19. Most of the ESA's conservation measures apply only after the Secretary lists a species as threatened or endangered. For example, section 7 of the ESA requires all federal agencies to "insure" that their actions neither "jeopardize the continued existence" of any listed species nor "result in the destruction or adverse modification" of a species' critical habitat. 16 U.S.C. § 1536(a)(2). Section 9 of the ESA prohibits, among other things, "any person" from intentionally taking listed species or incidentally taking listed species without a permit from the Secretary. 16 U.S.C. §§ 1538(a)(1)(B), 1539. Concurrently with listing, the Secretary must designate the species' critical habitat – areas essential to the conservation of the species. 16 U.S.C. §§ 1532(5)(A), 1533(a)(3)(A). Other provisions of the ESA require the Secretary to "develop and implement" recovery plans for listed species, 16 U.S.C. § 1533(f), authorize the Secretary to acquire land for the protection of listed species, 16 U.S.C. § 1534, and make federal funds available to states to assist in their efforts to preserve and protect threatened and endangered species, 16 U.S.C. § 1535(d).

20. To ensure the timely protection of imperiled species, Congress set forth a detailed process whereby citizens may petition the Secretary to list a species as endangered or threatened. The process includes mandatory, non-discretionary deadlines that the Secretary must meet, so that species in need of protection do not languish in administrative purgatory. The three required findings, described below, are the 90-day finding, the 12-month finding, and the final listing determination.

21. Upon receipt of a listing petition, the Secretary must "to the maximum extent practicable, within 90-days" make an initial finding as to whether the petition

"presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). If the Secretary finds that the petition *does not* present substantial information indicating that listing may be warranted, the petition is rejected and the process ends.

22. If, on the other hand, the Secretary determines that a petition *does* present substantial information indicating that listing may be warranted, the Secretary must then conduct a full scientific review of the species' status. 16 U.S.C. § 1533(b)(3)(A). Upon completion of this status review, and within 12-months from the date that he received the petition, the Secretary must make one of three findings: (1) listing is not warranted; (2) listing is warranted; or (3) listing is warranted, but precluded by other pending proposals for listing species, provided certain circumstances are present. 16 U.S.C. § 1533(b)(3)(B).

23. If the Secretary's 12-month finding concludes that listing is warranted, the Secretary must then publish notice of the proposed regulation to list the species as threatened or endangered in the Federal Register for public comment. 16 U.S.C. § 1533(b)(3)(B)(ii). Within one year of the publication of the proposed regulation, the ESA requires the Secretary to render his final determination on the proposal. 16 U.S.C. § 1533(b)(6)(A). At such time, the Secretary must either list the species, withdraw the proposed listing rule or, if there is substantial disagreement about scientific data, delay a final determination for up to six months to solicit more scientific information. 16 U.S.C. §§ 1533(b)(6)(A)(i), 1533(b)(6)(B)(i).

24. It is critical that the Secretary follow scrupulously the ESA's listing procedures and deadlines if species are to be protected in a timely manner, because the ESA does not protect a species until it is formally listed as either endangered or threatened.

25. The ESA provides for listing of "species," but that term includes subspecies and "distinct population segments of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16). Thus, the ESA provides that subspecies and distinct vertebrate population segments may be listed as distinct "species."

## V. FACTUAL BACKGROUND

### A. The Tucson Shovel-Nosed Snake

26. The Tucson shovel-nosed snake is a recognized subspecies of the western shovel nosed-snake that is found in the upper Sonoran Desert, generally on valley floors below 2,200 feet of elevation. The current range of the Tucson shovel-nosed snake is limited to northeastern Pima County and the adjoining extreme southern portion of Pinal County. The subspecies' historic range is thought to include a larger area consisting of portions of northern Pima County, northern and southwestern Pinal County, and southeastern Maricopa County.

27. Shovel-nosed snakes are small (25 to 42.5 centimeters, or 9.84 to 16.73 inches total length) with a distinctive shovel-shaped snout and a banded coloration that mimics venomous coral snakes. Tucson shovel-nosed snakes are characterized by 23 to 29 dark primary crossbands, which do not completely encircle the snake's body, and 7

to 11 black or brown secondary crossbands on the tail.  Shovel-nosed snakes are uniquely adapted to their sandy environment, and use their snouts to literally swim through sandy soils.  It is believed that Tucson shovel-nosed snakes may rely more heavily than other shovel-nosed snakes on scorpions for a significant portion of their diet.

28. The Tucson shovel-nosed snake is threatened with extinction due to the historical and ongoing destruction and modification of its habitat associated with rapid residential ex-urban development, agriculture, off-road vehicle use, and other human activities.  Current federal, state, and local regulatory mechanisms have been ineffective in reversing the species' trend toward extinction.

29. Based on these threats and the inadequacy of existing regulatory mechanisms, the Center submitted a petition on December 15, 2004 to list the Tucson shovel-nosed snake as an endangered or threatened species.  The Secretary received the petition on or about December 21, 2004.

30. On July 29, 2008, the Service issued a 90-day finding on the Tucson shovel-nosed snake.  This finding concluded that the Center's petition presented substantial scientific or commercial information indicating that listing the Tucson shovel-nosed snake may be warranted.

31. To date, well over 12 months after receiving the Center's petition, the Secretary has failed to issue the required 12-month finding as to whether listing the Tucson shovel-nosed snake is warranted.

**B.     The Cactus Ferruginous Pygmy-Owl**

32.    Ferruginous pygmy-owls are small (only 14 to 18 centimeters long), reddish-brown, daylight-hunting owls found in the United States, Mexico, Central America, and South America.  Until recently, all ferruginous pygmy-owls in North, Central, and South America were classified as a single species.  Recent genetic analyses indicate, however, that populations in North and Central America and in South America should be recognized as a distinct species (*Glaucidium ridgwayi* and *Glaucidium brasilianum*, respectively).  In addition, these genetic analyses suggest a further division of the North and Central American species into two subspecies – one in Arizona and the Mexican states of Sonora and Sinaloa (the western subspecies *G. Ridgwayi cactorum*), and a second in the southern tip of Texas and the remainder of Mexico and Central America.

33.    On March 10, 1997, in response to a petition submitted by members and staff of the Center, the Service listed the Arizona DPS of the cactus ferruginous pygmy-owl as an endangered species.  62 Fed. Reg. 10730.  The Service subsequently designated critical habitat for the listed cactus ferruginous pygmy-owl DPS.

34.    In 2001, the National Association of Home Builders and other industry and trade organizations challenged the validity of listing the Arizona DPS of the cactus ferruginous pygmy-owl as an endangered species.  *National Ass'n of Home Builders* v. *Norton*, Case No. Civ. 00–0903–PHX–SRB.  On September 21, 2001, the district court for the District of Arizona upheld the listing, but the Service voluntarily remanded the critical habitat designation, which the industry plaintiffs had also challenged.

35. On November 27, 2002, the Service published a new proposed critical habitat designation for the Arizona DPS of the cactus ferruginous pygmy-owl, and on January 9, 2003, the Service published notice of the availability of a draft recovery plan for the cactus ferruginous pygmy-owl. Neither the new critical habitat designation nor the recovery plan were ever finalized.

36. On August 19, 2003, the Ninth Circuit Court of Appeals reversed the district court's judgment regarding listing of the Arizona cactus ferruginous pygmy-owl DPS, holding that although the Arizona pygmy-owl population met the "discreteness" criterion for listing a DPS according to the Service's own DPS policy, the Service failed to meet the second criterion of the DPS policy because it did not articulate a rationale basis for finding that the population was "significant." *National Ass'n of Home Builders v. Norton*, 340 F.3d. 835, 840 (9th Cir. 2003). The Service subsequently removed the cactus ferruginous pygmy-owl from the list of endangered species. 71 Fed. Reg. 19452 (April 14, 2006).

37. Based on new genetic and taxonomic information that post-dated the original listing (and the Ninth Circuit's decision in *National Ass'n of Home Builders v. Norton*), on March 15, 2007, the Center submitted a new petition to list (1) the Arizona DPS of the cactus ferruginous pygmy-owl, (2) the Sonoran Desert DPS of the cactus ferruginous pygmy-owl, or (3) the entire western subspecies of the cactus ferruginous pygmy-owl as an endangered or threatened species. The Center's petition presented the new genetic and taxonomic information indicating that both the Arizona and Sonoran Desert populations meet the "discreteness" and "significance" criteria of the Service's

DPS policy, and thus qualify as a DPS. The Center's petition further presented information that the Sonoran Desert DPS of the cactus ferruginous pygmy-owl qualifies as an endangered or threatened species due to urban sprawl, invasive non-native species, livestock grazing, and other factors. The Secretary received this petition on or about March 20, 2007.

38. On June 2, 2008, the Secretary issued a 90-day petition finding, which concluded that the Center's petition presented substantial scientific or commercial information indicating that the listing the entire cactus ferruginous pygmy-owl may be warranted. 73 Fed. Reg. 31418, 314424.

39. To date, well over 12 months after receiving the Center's petition, the Secretary has failed to make the mandatory 12-month finding as to whether the listing of the cactus ferruginous pygmy-owl is warranted.

## VI.   FIRST CLAIM FOR RELIEF
**(Failure to Make a Timely 12-Month Finding on the Tucson Shovel-Nosed Snake)**

40. Each and every allegation set forth in paragraphs 1 through 39 is incorporated herein by reference.

41. The Secretary's failure to make a timely 12-month finding on the Center's petition to list the Tucson shovel-nosed snake as an endangered or threatened species violates the ESA. 16 U.S.C. §§ 1533(b)(3)(B); 1540(g). The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, the Secretary's failure to comply

with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

## VII.   SECOND CLAIM FOR RELIEF

**(Failure to Make a Timely 12-Month Finding on the Cactus Ferruginous Pygmy-Owl)**

42. Each and every allegation set forth in paragraphs 1 through 39 is incorporated herein by reference.

43. The Secretary's failure to make a timely 12-month finding on the Center's petition to list the cactus ferruginous pygmy-owl as an endangered or threatened species violates the ESA. 16 U.S.C. §§ 1533(b)(3)(B); 1540(g). The Secretary's failure to perform his mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA, 5 U.S.C. § 706(2).

## VIII.   PRAYER FOR RELIEF

WHEREFORE, the Center respectfully requests that this Court enter judgment providing the following relief:

(1) Declare that Defendants violated the ESA and/or APA by failing to issue a timely 12-month finding as to whether listing the Tucson shovel-nosed snake is warranted;

(2) Order the Secretary to issue a finding forthwith as to whether listing the Tucson shovel-nosed snake is warranted. 16 U.S.C. § 1533(b)(3)(B);

(3) Declare that Defendants violated the ESA and/or APA by failing to issue a timely 12-month finding as to whether listing the cactus ferruginous pygmy-owl is warranted;

(4) Order the Secretary to issue a finding forthwith as to whether listing the cactus ferruginous pygmy-owl or a DPS of the cactus ferruginous pygmy-owl is warranted. 16 U.S.C. § 1533(b)(3)(B);

(5) Grant the Center its fees, costs, expenses and disbursements, including reasonable attorneys' fees; and

(6) Grant the Center such additional and further relief as the Court deems just and proper.

Dated: February 17, 2010.                    Respectfully submitted,

                        s/ John Buse
                        John Buse (CA Bar No. 163156)
*pro hac vice* application pending
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street, Suite 600
San Francisco, CA 94104
Telephone: (323) 533-4416
Facsimile: (415) 436-9683
Email: jbuse@biologicaldiversity.org

Attorneys for Plaintiff
CENTER FOR BIOLOGICAL DIVERSITY